UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON a/s/o RESTORATION
HARDWARE, INC.,

    Plaintiff,

v.                                                   Case No. 8:23-cv-2149-KKM-LSG

CIRSCO, COMMERICAL INDUSTRIAL ROOF
SERVICES COMPANY,

    Defendant.
_____

## ORDER

The parties have filed cross motions for summary judgment in this negligence action arising out of the flooding of a furniture store. (Docs. 36, 37). For the below reasons, I deny both motions.

### I. BACKGROUND

Restoration Hardware leased commercial space from Brown-19, LLC. Joint Statement of Undisputed Facts (JSUF) (Doc. 39) ¶ 1. Brown-19 contracted with CIRSCO to perform roofing work and related construction services at the leased property. *Id.* ¶ 2. On August 2, 2022, CIRSCO opened the roof directly above the store. *Id.* ¶¶ 3–

4. After CIRSCO removed a section of the roof, rain began to fall, and rainwater flooded the store that Restoration Hardware leased. *Id.* ¶¶ 5–6.

Certain Underwriters at Lloyd's London (Lloyd's), Restoration Hardware's insurer, initiated this negligence action against CIRSCO after allegedly paying Restoration Hardware for the damages caused by the rainwater. Compl. (Doc. 1); Am. Compl. (Doc. 20). Lloyd's alleges that CIRSCO was negligent for failing to tarp the roof in advance of opening it and for failing to prevent the entry of rainwater. Am. Compl. ¶¶ 19–20, 23, 27, 32, 35. Lloyd's seeks judgment in the amount of $800,000.00. *Id.* at 7. Both parties move for summary judgment. (Docs. 36, 37).

## II.   LEGAL STANDARD

Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant always bears the initial burden of informing the district court of the basis for its motion and identifying those parts of the record that demonstrate an absence of a genuine issue of material fact. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). When that burden is met, the burden shifts to the nonmovant to present evidentiary materials (e.g., affidavits, depositions, exhibits, etc.) demonstrating that there

is a genuine issue of material fact, which precludes summary judgment. *Id.* A moving party is entitled to summary judgment if the nonmoving party "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

I review the record evidence as identified by the parties and draw all legitimate inferences in the nonmoving party's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1262 (11th Cir. 2020); *Reese v. Hebert*, 527 F.3d 1253, 1268 (11th Cir. 2008). Here, to the extent that the record is disputed or capable of multiple inferences, I draw them in favor of the non-movant.

## III. ANALYSIS

"The tort of negligence includes the four elements of duty, breach, causation, and damages." *Bing v. Alachua County*, 392 So. 3d 266, 269 (Fla. 1st DCA 2024). Lloyd's argues that there are no genuine issues of material fact and that all four elements are met. Pl.'s Mot. for Summ. J. (Pl.'s MSJ) (Doc. 36) at 4. CIRSCO challenges the first three elements—duty, breach, and causation. Def.'s Mot. for Summ. J. (Def.'s MSJ) (Doc. 37) at 3–11. CIRSCO also argues that the negligence claim is based on "impermissible inference stacking." *Id.* at 7–9. Neither party is entitled to summary judgment.

## A. Lloyd's Motion

Lloyd's argues that no genuine issues of material fact remain as to CIRSCO's negligence. Pl.'s MSJ at 4. Because CIRSCO left the store exposed on the date of the incident, Lloyd's says, CIRSCO is fully responsible for the damage to the store as the result of the rain. *Id.*

Although some general version of that factual predicate appears true, the legal conclusion does not necessarily follow. First, reviewing the record in the light most favorable to CIRSCO, Lloyd's has failed to present sufficient evidence to demonstrate that it is entitled to sue as Restoration Hardware's subrogee. *See* Resp. to Pl.'s Mot for Summ. J. (Def.'s Resp.) (Doc. 41) at 5–8. Florida law recognizes both conventional subrogation and equitable subrogation. "Conventional subrogation arises or flows from a contract between the parties establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor." *Dade Cnty. Sch. Bd. v. Radio Station WQBA*, 731 So. 2d 638, 646 (Fla. 1999). "Equitable subrogation is generally appropriate where: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt, (4) the subrogee paid off the entire debt, and (5) subrogation would not work any injustice to the rights of a third party." *Id.* When seeking to sue under equitable subrogation, the subrogee, here allegedly Lloyd's, is required to establish all five elements. *Villa Maria*

*Nursing & Rehab. Ctr., Inc. v. S. Broward Hosp. Dist.*, 8 So. 3d 1167, 1169 (Fla. 4th DCA 2009).

In the amended complaint, Lloyd's alleges that it "paid its insured for the damages caused to the extent it was insured by [Lloyd's]," meaning that Lloyd's is "subrogated by its insured to bring this action on its own behalf and on behalf of its insured and all parties affected by the loss for the damage caused by [CIRSCO]." Am. Compl. ¶ 31. But Lloyd's does not supply any evidence demonstrating this assertion. Lloyd's identifies no contract with Restoration Hardware "establishing an agreement that the party paying the debt will have the rights and remedies of the original creditor." *WQBA*, 731 So. 2d at 646. Lloyd's also fails to identify evidence that it paid the entire amount of Restoration Hardware's damages. *See Holmes Reg'l Med. Ctr., Inc. v. Allstate Ins. Co.*, 225 So. 3d 780, 786 (Fla. 2017) ("[A] claim of equitable subrogation requires payment of the entire debt.").[1]

Although Lloyd's contends that subrogation is warranted because Lloyd's insured and indemnified Restoration Hardware after the loss occurred, Pl.'s Reply (Doc. 46) at 5, "[s]tatements by counsel in briefs are not evidence," *Travaglio v. Am. Exp. Co.*, 735 F.3d

---

[1] This rule has a specific application in the insurance context. "Generally, where the insurer has paid the full amount required by the insurance contract, but the insured's actual loss exceeds the total amount recovered from the insurer and the tort-feasor, the insurer's subrogation rights cannot be enforced because the insured has not been made whole." *Collins v. Wilcott*, 578 So. 2d 742, 744 (Fla. 5th DCA 1991). "An exception to this general principle occurs when the insured and the insurer enter into a settlement agreement providing otherwise." *Id.*; *see* 16 JORDAN R. PLITT, ET AL., COUCH ON INSURANCE § 223:22 (3d ed. Dec. 2024 update) ("When an insurer has paid only part of the amount that it is required to pay to the insured, it has been held that the insurer is not entitled to be subrogated to the rights of the insured, at least in the absence of an agreement to the contrary." (footnotes omitted)).

1266, 1270 (11th Cir. 2013) (quoting *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980)). Even though the record provides some evidence that Lloyd's insured Restoration Hardware and includes mention of a possibility of subrogation, *see* (Doc. 36) at 21–26, Lloyd's fails to set forth sufficient evidence to demonstrate that it may bring this action as a subrogee. Of course, CIRSCO did not move for summary judgment on this basis. If Lloyd's fails to put on sufficient evidence to support its subrogation argument at trial, CIRSCO would be entitled to a directed verdict.

Beyond standing as a subrogee, Lloyd's second problem is that it fails to point to undisputed evidence as to what transpired on August 2, 2022. Lloyd's has therefore failed to show the absence of a genuine issue of material fact. *Clark*, 929 F.2d at 608.

From CIRSCO's correspondence with its insurer, for example, two different descriptions emerge as to what occurred. First, according to CIRSCO's insurer, CIRSCO represented that "it had removed a portion of the roof when a sudden rainstorm popped up," and that, although "[t]he crew then attempted to cover the open portion of the roof with tarp," "there was simply too much rain, and the amount of water overwhelmed the tarp." (Doc. 36) at 13. In a subsequent letter, though, a CIRSCO employee represented that, when the storm approached, CIRSCO employees were in the process of "fastening the tarp to the deck and sealing the edges with caulk in accordance with standard protocol as recommended by the National Roofing Contractors Association for such a situation."

*Id.* at 11. The "rain moved upon [the employees] too fast" and the employees "did not have time to finish the fastening." *Id.*

Lloyd's motion for summary judgment assumes that CIRSCO employees left the roof open when the rain began, but there is no conclusive evidence—such as a video of the roof on the date in question—to resolve the question. Presumably Lloyd's will rely at trial on some version of the statements by Restoration Hardware employee Mario Leverette—which formed the basis for Lloyd's expert report by H. Howard Piper. Levertte apparently told Piper that CIRSCO's workers removed a portion of the existing roof that measured 3 feet wide by 200 feet long and that the rain began before the workmen were able to install tarps. *Id.* at 31. Even if admissible, these hearsay statements do not conclusively resolve the facts in Lloyd's favor.

Third, the Lloyd's fails to acknowledge the disputes of material fact as to breach. Lloyd's expert and CIRSCO's expert offer different opinions as to whether it would have been prudent for CIRSCO employees to have taken certain steps to prevent water entry in the event of a rainstorm. *Compare* (Doc. 36) at 32 (recommending installation of a "tarp with a water hose connector" below the roof deck), *with* (Doc. 37) at 16 (disagreeing with this recommendation). Summary judgment is not proper in such circumstances.

Finally, for many of the same reasons, Lloyd's has failed to demonstrate a lack of genuine issue as to causation, particularly as to proximate cause. Without presenting a clear

7

and unimpeachable picture of what occurred on August 2, 2022, and what was foreseeable, Lloyd's is not entitled to judgment as a matter of law. A jury is ordinarily tasked with deciding both breach and causation, and this case is not an outlier. *Walt Disney World Co. v. Goode*, 501 So. 2d 622, 626 (Fla. 5th DCA 1986). Considering the little evidence in the record in the light most favorable to CIRSCO, Lloyd's is incorrect that no genuine issue of material fact remains.

### B. CIRSCO's Motion

CIRSCO argues that it is entitled to summary judgment because Lloyd's has failed to establish the elements of duty, breach, and causation. Def.'s MSJ at 4–7, 9–11. CIRSCO also argues that Lloyd's relies on impermissible inference stacking to meet its burden. *Id.* at 7–9.

#### 1. Duty

CIRSCO first contends that Lloyd's claim relies on a misstated duty of care. *See* Def.'s MSJ at 6. "The element of duty is ordinarily a question of law for the trial court to decide rather than a question of fact." *Bing*, 392 So. 3d at 269. The duty element "focuses on whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992); *see Smith v. Fla. Power & Light Co.,* 857 So. 2d 224, 229 (Fla. 2d DCA 2003) ("Under the framework set forth by the supreme court, the zone of risk created by a

defendant defines the scope of the defendant's legal duty and the scope of the zone of risk is in turn determined by the foreseeability of a risk of harm to others."). In applying this test, the Florida Supreme Court "has focused on the likelihood that a defendant's conduct will result in the type of injury suffered by the plaintiff." *Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont'l Grain Co.*, 715 So. 2d 343, 345 (Fla. 4th DCA 1998). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989).

According to CIRSCO, the claim here relies on a conception of the duty of care that goes beyond the "foreseeable zone of risk." Def.'s MSJ at 6. CIRSCO argues that, under the duty of care recited in the amended complaint, "all contractors would have a legal duty to keep all personal property of a tenant safe from all damage at all times, not just for those risks that are reasonably foreseeable." *Id.*

Although removing foreseeability from the duty inquiry would contradict Florida law and CIRSCO certainly did not owe Restoration Hardware an "absolute duty" to protect all property, Def.'s MSJ at 9, the undisputed record shows that CIRSCO owed some duty to Restoration Hardware. Although CIRSCO argues that Lloyd's fails to produce any evidence indicating that the rainstorm that caused the damage was foreseeable,

9

*see, e.g., id.* at 9, CIRSCO does not plausibly argue that water damage from a rainstorm in Florida during the summer is not a "foreseeable risk" of roofing work. *Cf. Knight v. Waltman*, 774 So. 2d 731, 734 (Fla. 2d DCA 2000) ("Clearly, the existence of the covered hole in the roof created a foreseeable 'zone of risk' that posed a general risk of harm to others."). CIRSCO's argument as to duty therefore does not present a basis for granting its motion for summary judgment.

   2. Standard of Care and Breach

After establishing the existence of a duty, a plaintiff must establish "a breach of that duty by allowing conduct to fall below the applicable standard of care." *Torres v. Sarasota Cnty. Pub. Hosp. Bd.*, 961 So. 2d 340, 344 (Fla. 2d DCA 2007). The jury is tasked with determining the relevant standard of care and whether the defendant breached it. *Johnson v. Wal-Mart Stores E., LP*, 389 So. 3d 705, 711 n.3 (Fla. 5th DCA 2024); *Sanderson v. Eckerd Corp.*, 780 So. 2d 930, 933 (Fla. 5th DCA 2001). CIRSCO argues that the record lacks specific facts establishing CIRSCO's deviation from the reasonable standard of care. Def.'s MSJ at 6. CIRSCO is incorrect.

The Eleventh Circuit has held that judgment as a matter of law is warranted when the plaintiff fails "to put forth some evidence of the standard of care in the roofing industry." *Ins. Co. of the W. v. Island Dream Homes, Inc.*, 679 F.3d 1295, 1298 (11th

Cir. 2012).[2] Although compliance or noncompliance with the industry standard is not necessarily dispositive, *id.* at 1299, *Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1282 (11th Cir. 2015), a plaintiff remains obligated to "present some kind of evidence from which a jury could conclude that the roofers' actions were contrary to custom or the relevant standard of care," *Island Dream Homes, Inc.*, 679 F.3d at 1300. This evidence may come in the form of "expert testimony" or "testimony of roofing custom." *Id.* at 1298. When "the subject matter is beyond the understanding of the average juror," expert testimony is ordinarily required. *Id.*; *see AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So. 2d 580, 582 (Fla. 4th DCA 2006) ("[A] jury could not have determined that the agent was negligent in the absence of an opinion of an expert. This was simply too esoteric to be understood by the average layperson.").

According to Lloyd's, "CIRSCO acted negligently in failing to tarp the open roof in advance of its opening of the roof and for failing to protect the store below by preventing the entry of water into the premises below." Am. Compl. ¶ 23; *see id.* ¶ 32 ("CIRSCO was negligent and is fully responsible for its failure to act in advance of opening up the roof to act to protect and prevent the entry of rain and water including from the scuppers into the subject premises on August 2, 2022."). For this this argument to succeed, Lloyd's must

---

[2] "[T]he 'standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same.'" *Chapman v. AI Transp.*, 229 F.3d 1012, 1025 n.11 (11th Cir. 2000) (en banc) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

establish that CIRSCO's acts or omissions violated the applicable standard of care. Because the standard of care governing the work of a roofing contractor "is beyond the understanding of the average juror," expert testimony is required in most cases. *Island Dream Homes, Inc.*, 679 F.3d at 1298–99.

Lloyd's relies on the report of H. Howard Piper. *See* (Doc. 36) at 30–41. Piper opines that, to "prevent water entry into the building," CIRSCO "would need to not only seal the roof to water entry but provide a path to the scuppers to prevent accumulation of water on the roof." *Id.* at 31. Piper then provides a list of six steps that CIRSCO could have taken to accomplish this goal. *Id.* Piper also opines that CIRSCO "may have been able to better cover or control the water entry" if it had "removed a smaller portion of the existing roofing system." *Id.* at 32. CIRSCO, Piper says, also could have installed a "tarp with a water hose connector." *Id.*

Piper concludes that CIRSCO did not take "prudent action" because "[s]maller areas of roof could have been removed which would have lessened the exposure to water entry from a sudden rain event and improved the chances to make temporary repairs to lessen or prevent any water entry." *Id.*; *see id.* ("In our opinion, the roofing contractor did not properly consider how to prevent water entry into the building should a sudden rain event occur. . . . A better approach would have been to remove smaller areas of roof where the area could have been covered with tarps and water draining to the area diverted to other

scuppers temporarily."). Because "rain is expected every day during August," Piper says, roofing contractors "should take the necessary precautions to avoid allowing water into buildings," including keeping "tarps on hand to help control water entry into the building." *Id.* If Piper was deposed, neither party provides that transcript and Lloyd's submits only the report with the above opinions.

Although Piper's report fails to directly explicate the relevant standard of care, his report, when read in the light most favorable to Lloyd's, provides the jury with "evidence from which [it] could conclude that the roofers' actions were contrary to custom or the relevant standard of care." *Island Dream Homes, Inc.*, 679 F.3d at 1300. A reasonable jury could conclude that CIRSCO's actions fell below the industry standard of care based on Piper's enumeration of specific steps that CIRSCO failed to take and Piper's opinion that CIRSCO failed to take "prudent action." (Doc. 36) at 31–32. At trial, of course, CIRSCO will have the opportunity to cross-examine Piper about the standard of care in the roofing industry, *see* Def.'s MSJ at 10–11 (disagreeing with Piper's opinion); *see also* (Doc. 37) at 14–17 (peer review of Piper's report), and a reasonable jury could reach a conclusion favorable to CIRSCO based on that cross-examination and other evidence. Given that a reasonable jury could reach either result, though, CIRSCO's motion for summary judgment on this basis is denied.

13

3. Causation

To meet its burden as to the causation element, Lloyd's must prove both "cause in fact and foreseeability." *Lindsey v. Bell S. Telecomms., Inc.*, 943 So. 2d 963, 965 (Fla. 4th DCA 2006); *see Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977, 981–82 (Fla. 2018). Lloyd's must show that CIRSCO's negligence was a cause-in-fact of its injuries and that the injuries were "a foreseeable consequence of the danger created by the [CIRSCO's] negligent act or omission." *Ruiz*, 260 So. 3d at 981–82 (quoting *Stahl v. Metro. Dade Cnty.*, 438 So. 2d 14, 21 (Fla. 3d DCA 1983)); *accord McCain*, 593 So. 2d at 502 ("The proximate causation element . . . is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred."). In other words, but-for and proximate causation is required.

A harm is "proximate" if "prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *McCain*, 593 So. 2d at 503. An injury, though, that is "caused by a freakish and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable." *Id.*; *see id.* ("The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience."). The question of causation is ordinarily for the fact-finder to resolve. "[W]here reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was

genuinely foreseeable or merely an improbable freak—then the resolution of the issue must be left to the fact-finder." *Id.* at 504. (emphasis in the original).

CIRSCO argues that there is no genuine issue of material fact as to causation and that the storm, allegedly a microburst, "was neither foreseeable nor preventable." Def.'s MSJ at 9–11.[3] CIRSCO faults Lloyd's for failing to present weather data demonstrating a chance of rain on the date of the accident. *Id.* at 10.

A reasonable jury could conclude that CIRSCO's conduct caused the flooding of Restoration Hardware. First, a reasonable jury could find that CIRSCO's conduct was a cause-in-fact of the flood. In other words, taking the evidence in the light most favorable to Lloyd's, a reasonable jury could find a "natural, direct, and continuous sequence between the negligent act and the injury," such that "it can reasonably be said that but for the act the injury would not have occurred." *Florida, Dep't of Child. & Fam. Servs. v. Amora*, 944 So. 2d 431, 436 (Fla. 4th DCA 2006); *see, e.g.*, (Doc. 36) at 32 ("Smaller areas of roof could have been removed which would have lessened the exposure to water entry from a sudden rain event and improved the chances to make temporary repairs to lessen or prevent any water entry.").

---

[3] "A microburst is a localized column of sinking air (downdraft) within a thunderstorm and is usually less than or equal to 2.5 miles in diameter." *Microbursts*, NAT'L WEATHER SERV., https://perma.cc/GSA2-VPRX. CIRSCO has not established that the storm at issue was a microburst.

Second, a reasonable jury could conclude that the flooding of Restoration Hardware was a "foreseeable consequence" of CIRSCO's negligence. *Ruiz*, 260 So. 3d at 981–82 (quoting *Stahl*, 438 So. 2d at 21). During August in Florida, rainstorms are quite common. As a result, a flooded store is a "genuinely foreseeable" result of negligent roofing work. *McCain*, 593 So. 2d at 503. In the light of "common human experience," the damage to Restoration Hardware was not "utterly unpredictable." *Id.* CIRSCO therefore has failed to show that reasonable persons could not "differ as to whether the facts establish proximate causation." *Id.* at 504; *cf. St. Fort ex rel. St. Fort v. Post, Buckley, Schuh & Jernigan*, 902 So. 2d 244, 250 (Fla. 4th DCA 2005) ("Circumstances under which a court may resolve proximate cause as a matter of law are extremely limited."). It is not the case that the "only reasonable inference is that [the] injury was factually unforeseeable." *McCain*, 593 So. 2d at 505. To the extent the parties disagree as to whether a microburst occurred, those disputes of fact and their relevance to proximate causation are reserved to the jury. CIRSCO's motion for summary judgment is denied on this basis.

4. Stacking of Inferences

In Florida, if a party "to a civil action depends upon the inferences to be drawn from circumstantial evidence as proof of one fact, it cannot construct a further inference upon the initial inference in order to establish a further fact unless it can be found that the original, basic inference was established to the exclusion of all other reasonable inferences."

*Wilson-Greene v. City of Miami*, 208 So. 3d 1271, 1275 (Fla. 3d DCA 2017) (quoting *Cohen v. Arvin*, 878 So. 2d 403, 405 (Fla. 4th DCA 2004)). CIRSCO argues that Lloyd's "improperly attempts to improperly stack unsubstantiated inferences to establish both the elements of breach and proximate cause." Def.'s MSJ at 9.

In federal court, the standards fixed in Federal Rule of Civil Procedure 56 apply when adjudicating a motion for summary judgment. Thus, the federal rule—which permits all "reasonable" inferences—applies instead of Florida's rule against stacking inferences. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1323–24 (11th Cir. 1982). CIRSCO does not convincingly explain how Lloyd's case rests on unreasonable inferences. Further, even assuming the relevance of Florida law, impermissible inferences exist under Florida's rule only "when no direct evidence is presented on negligence or causation and a jury infers causation based on an inference of negligence." *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951, 959 (11th Cir. 2014). Take, for example, a case where the trial court found negligence and proximate cause after the plaintiff was injured while climbing on a ladder even though "there was no evidence that the ladder was defective, that its placement created a dangerous condition, or why the ladder slipped." *Id.*; *see Hurst v. Astudillo*, 631 So. 2d 380, 381 (Fla. 3d DCA 1994) (per curiam). This case is different considering the evidence of negligence in the record, such as Piper's report. Summary judgment is thus unwarranted on this basis.

IV.  CONCLUSION

Neither party is entitled to summary judgment.

Accordingly, the following is **ORDERED:**

1. The Motions for Summary Judgment (Docs. 36, 37) are **DENIED**.

**ORDERED** in Tampa, Florida, on March 5, 2025.

Kathryn Kimball Mizelle
United States District Judge